```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION

ANNA BOURKE, Individually and as   )
personal representative of the     )
Estate of RICHARD M. BOURKE,       )
                                   )
         Plaintiff,                )
                                   )
    vs.                            )   NO. 2:03-CV-136
                                   )
FORD MOTOR COMPANY,                )
                                   )
         Defendant.                )
```

## OPINION AND ORDER

This matter is before the Court on Ford Motor Company's Motion to Exclude the Testimony of Mickey Gilbert, filed on September 26, 2005. For the reasons set forth below, this motion is **DENIED**.

BACKGROUND

Plaintiff, Anna Bourke, individually and as personal representative of the Estate of Richard M. Bourke, has brought suit against Defendant, Ford Motor Company, stemming from an August 21, 2001, motor vehicle accident. On that date, Plaintiff and her husband, Richard Bourke, were driving their 2000 Ford Explorer back home from Washington D.C. Immediately prior to the accident, the vehicle Richard Bourke was driving drifted off the left side of the road. Richard Bourke then attempted to steer the vehicle to back onto the road. Ultimately, the Explorer rolled over. Richard Bourke was

ejected from the vehicle and died.

Plaintiff intends to present evidence at trial that the Ford Explorer had inadequate rollover resistance. In support of this claim, Plaintiff has designated Michael G. "Mickey" Gilbert, P.E. to provide expert opinions regarding the lack of stability of the 2000 Ford Explorer. Ford filed the instant motion to exclude Gilbert's testimony. On December 8, 2006, the Court held a hearing on this motion, wherein Plaintiff presented the testimony of Gilbert. At the conclusion of the hearing, the Court informed the parties of its persuasion that Gilbert was qualified to offer expert opinions in this case and also that the methodology was reliable. Despite this, Ford asked the Court to withhold its ruling and be allowed to file a supplemental memorandum regarding an additional argument under Indiana's Product Liability Act. Ford has now filed this memorandum, to which Plaintiff has responded.

DISCUSSION

Federal Rule of Evidence 702 governs the admissibilty of testimony by experts and provides:

> If scientific, technical, or other specialized knowledge will assist a trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the

-2-

>     principles and methods reliably to the facts of
>     the case.

The admissibility of expert testimony, whether it relates to areas of traditional scientific competence or whether it is founded on technical or other specialized knowledge, is governed by the Supreme Court's *Daubert* and *Kumho Tire* decisions. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 152 (1999). Under these cases, this Court is to exercise a "gatekeeping" function to ensure that expert testimony is both reliable and relevant. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006). The fundamental purpose of this gate-keeping requirement "is to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Simply, the Court is "required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue." *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). The Court possesses broad latitude in determining whether expert testimony is reliable. *Kumho Tire*, 526 U.S. at 152. Notably, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee notes (2000 amendments).

In analyzing the reliability of a proposed expert, the role of this Court "is to determine whether the expert is qualified in the

-3-

relevant field and to examine the methodology the expert has used in reaching his conclusions. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Rule 702 provides that an expert may be qualified by "knowledge, experience, training or education." As this Court previously alluded to at the December 8, hearing, it finds that Gilbert is qualified to testify regarding the accident reconstruction of the subject accident, and regarding the alleged stability design, including the lack of Electronic Stability Control ("ESC"). For the past 11 years, Gilbert has devoted his professional career to the study and testing of rollover motor vehicle accidents. (Gilbert Dec. ¶ 16). Gilbert is a licensed professional engineer. (Gilbert Dec. ¶ 3). Further, as an accident reconstructionist, he has investigated several hundred auto accidents, over 60 of which were rollover accidents involving Ford Explorers. (Gilbert Dec. ¶ 4). Gilbert frequently considers vehicle design in relation to how and why a vehicle rolled over in a particular accident. (Gilbert Dec. ¶ 4). Gilbert is also a member of several professional organizations in these fields. (Gilbert Dec. ¶¶ 6-9). He has written several peer reviewed publications regarding rollover accident reconstruction issues. (Gilbert Dec. ¶ 10). He has also developed a test that utilizes the scientific method to determine the conditions under which a vehicle will rollover on dry, flat pavement and an analytical process that determines the modifications which can prevent these types of rollover accidents. (Gilbert Dec. ¶¶ 12, 25-37). Gilbert

has conducted extensive rollover tests of Ford Explorer vehicles in both stock and modified forms (Gilbert Dec. ¶ 39). In addition to his own testing, Gilbert has studied rollover resistance testing by Ford on Ford Explorers. (Gilbert Dec. ¶ 40-41). The primary design issues examined by Gilbert are the vehicle's geometry and the dynamic roll gradient, which are basic engineering fundamentals that Gilbert is familiar with. (Gilbert Dec. ¶ 46).

Ford's main argument is that Gilbert cannot be an expert in this case because he is not an expert on the design process of the Ford Explorer. However, this point is more appropriately addressed on cross-examination of Gilbert at trial. *See Smith*, 215 F.3d at 720(noting that expert testimony need only be relevant to evaluating a factual matter in the case; it need not relate directly to the ultimate issue that is to be resolved by the trier of fact).

During the December hearing, the Court also alluded to the fact that it believed Gilbert's methodology satisfied the gate-keeping threshold. This remains true to date. Some factors to consider in determining whether the methodology is reliable includes: (1) whether the opinion can be tested; (2) whether the opinion has been subjected to peer review and publication; (3) any known or potential rate of error of the methodology employed; and (4) the degree of general acceptance of the opinion or its methodology within the relevant field. *Daubert*, 509 U.S. at 593-94. Gilbert is expected to provide testimony regarding the 2000 Explorer's design, the operation of yaw

-5-

control or ESC systems generally and how they respond in oversteer conditions. Gilbert is also expected to testify about the feasibility of adding ESC to the 2000 Explorer. There has been no challenge that these opinions can be tested. Moreover, Gilbert's opinions regarding yaw control, ESC, and rollover resistance have been subjected to both peer review and publication. And, Gilbert's methodology regarding rollover resistance essentially mirrors that used by the NHSTA.

In Ford's supplemental memorandum, Ford notes that this case is governed by Indiana's Product Liability Act, which requires proof of negligence in the design process in order for a plaintiff to prevail on a defective design claim. Under this scheme, Ford submits that Plaintiff has the burden of proving what standard of care applies in a specific context and whether Ford has breached its duty to adhere to that standard. *See Harris v. Raymond*, 715 N.E.2d 388 (Ind. 1999)(plaintiff bearing this burden in medical malpractice case).

Ford posits that "Gilbert is not qualified to identify the particular standard of care vehicle designers/manufacturers must conform their conduct to when designing a vehicle or its component parts, and is not qualified to opine that the standard of care was breached when Ford designed the components relative to the handling and stability of the 2000 Ford Explorer." This conclusion stems from Ford's unwavering position that Gilbert cannot be qualified as an expert in this case because he never worked for an auto manufacturer and never worked on the designing of a suspension system at an auto

manufacturer's facility.  As such, Ford believes that Gilbert cannot be an expert in this case.  However, this Court does not find these shortcomings to be fatal.

Gilbert's extensive qualifications regarding engineering, vehicle design, stability and testing would seemingly allow him to provide his opinion as to the appropriate standard of care and whether Ford breached that standard.  In addition to his own testing, Gilbert has studied rollover resistance testing performed by various auto manufacturers: Ford on Explorers; Toyota on 4Runners; General Motors on Suburbans and Blazers; DaimlerChrysler on Grand Cherokees; Isuzu on Rodeos and Troopers; and Mitsubishi on Monteros.  (Gilbert Dec. ¶ 40).  He has also studied all available Ford rollover test documents on Explorers and has studied other Ford test reports and related documents produced in this and other litigation.  (Gilbert Dec. ¶ 44).

Nevertheless, even if Gilbert was unable to provide the appropriate standard of care or whether there was a resulting breach, such a conclusion would not necessarily bar him as an expert in this case.  *See Smith*, 215 F.3d at 720(noting that expert testimony need only be relevant to evaluating a factual matter in the case; it need not relate directly to the ultimate issue that is to be resolved by the trier of fact).  Surely, under Ford's view, Plaintiff may ultimately have to provide expert testimony as to the appropriate standard of care and also provide evidence of a resulting breach to

avoid judgment as a matter of law.  However, Plaintiff's ultimate burden is not the same as Gilbert's.  Simply, Gilbert is not required to provide expert testimony as to the ultimate issue in this case to be qualified as an expert.  *Id.*

While not binding on this Court, it is telling that Gilbert has testified as to his opinions in 19 trials involving similar issues as seen here.  (Gilbert Supp. Dec. ¶¶ 3-4).  In many of those cases, Gilbert's expert testimony was unsuccessfully challenged.  (Gilbert Supp. Dec. ¶¶ 3-4).  Gilbert was precluded from testifying as an expert in *Bracho v. Bridgestone*, but that decision was based on the court being provided insufficient information regarding Gilbert's qualifications and experience.  (Gilbert Dec. ¶ 90).

CONCLUSION

For the reasons set forth above, this motion is **DENIED**.

**Dated:  December 27, 2006**            /s/   RUDY LOZANO, Judge
                                          **United States District Court**